IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**TONY MURRAY,**
    Plaintiff,

Vs.                               Case #2:05-cv-1240-MEF

**VeLINDA WEATHERLY,**
    Defendant.

### AFFIDAVIT

Before me, the undersigned authority, personally appeared VeLinda Weatherly, a Member of the Alabama Board of Pardons & Paroles, named as a Defendant in the above-styled action, who being duly sworn, deposed and said as follows:

"My name is VeLinda Weatherly. I am a Member of the Alabama Board of Pardons & Paroles. Before being appointed to the Board, I was a career State employee. I spent several years as a Classification Specialist before becoming a Probation & Parole Officer in Jefferson County.

"I remember Tony Murray from the time he was an inmate at Donaldson Correctional Facility, where I was employed as a classification specialist. I know that he has an extensive criminal history, and that he has been convicted of violent crimes. I know that he was paroled from sentences for violent crimes and that his parole was revoked when he shot and killed a security guard during another robbery. I know that one of his violent crimes was committed in prison. I also know that he has an extensive history of rule violations in prison.

"All of these facts were before me when the Board considered whether to parole Murray last year. I recall that Murray's criminal history and his disciplinary record came

1

up during the hearing, although I do not recall precisely who said what. I don't believe I said that prison guards are afraid to file disciplinary charges against him, because we discussed how many disciplinaries he had.

"After reviewing the available information regarding Murray's personal history, his criminal history, and his conduct in prison, I was not persuaded that he was sufficiently likely to obey the law if paroled, nor was I convinced that his release would benefit society. Although I do not recall exactly what I said, I can say that I am not persuaded that it would even be in his own family's best interest for him to be released at this time.

"Unfortunately, Murray's family are too close to the situation to view matters objectively. They have not recognized his responsibility for his actions or the need for him to shoulder the consequences of his crimes. They don't recognize how difficult it will be for him to adjust to life as a law-abiding citizen after so many years in the criminal lifestyle. They think that he can leave prison and become a positive role model for his son.

"I can understand why their feelings were hurt when I pointed out some of the problems, but I believed it was ultimately in Murray's best interest for his family to face reality. With his criminal history, parole is not assured at all. Without a stable support system, it is even less likely. As long as he is unable to comply with even the most basic prison rules, it is difficult for us to believe that he could follow parole conditions. The fact that Murray has a history of violent crime adds to our concern, because of the potential consequences of paroling a prisoner who hasn't learned not to commit violent crimes. The fact that he killed a man while on parole significantly affects our assessment

of his suitability for parole. It doesn't make our decision any easier when the family who should be helping support his rehabilitation look at the situation through 'rose-colored glasses' and don't see how serious some of these factors are.

"One could argue that I could have been more tactful. I understand and respect such a point of view. I might be reluctant to speak so frankly in the future. However, at the time I acted, my intent was to focus Murray's attention and his family's attention on his need to accept responsibility for changing his behavior, so that there might be a possibility in the future that we could, in good conscience, form the opinion that he would be likely to succeed on parole and that his release could be compatible with society's welfare.

"My comments were made in the context of reviewing Murray's past behavior and assessing his likelihood of success in the future. The other Board Members and I engaged Murray's family in a discussion of his challenges and his needs. We listened to their point of view, and we expressed some concerns. It is his responsibility to decide what actions he can take to persuade this Board in the future that he would be a suitable candidate for parole."

*VeLinda Weatherly*
VeLinda Weatherly

Sworn to & subscribed before me, this 1st day of March, 2006.

*Notary signature*
Notary Public
10/10/08

3